Filing # 34500018 E-Filed 11/16/2015 03:28:35 PM

# IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
## IN AND FOR HERNANDO COUNTY, FLORIDA
### CIVIL DIVISION

CHRISTOPHER SHEPPERD and
MICHAEL CORDIER, on behalf of
themselves and others similarly situated,

      Plaintiffs,

v.                            CASE NO.:

DIRECTV Global Holdings, LLC,
A Foreign Corporation,
MASTEC, INC., a Florida Profit Corporation
and MASTEC SERVICES COMPANY, INC.,
a Florida Profit Corporation,

      Defendants.

_____/

## COMPLAINT

Plaintiffs, CHRISTOPHER SHEPPERD and MICHAEL CORDIER ("Plaintiffs"),

on behalf of themselves and others similarly situated, hereby sue the Defendants,

DIRECTV Global Holdings, LLC, MASTEC, INC., and MASTEC SERVICES

COMPANY, INC. (collectively, "Defendants") and allege as follows:

## JURISDICTION, VENUE AND PARTIES

1.     This is an action for damages in excess of Fifteen Thousand Dollars

($15,000.00) exclusive of interest and costs.

2.     Venue lies within Hernando County because a substantial part of the

events giving rise to this claim arose in this Judicial District.

3.     At all times material, Plaintiffs are and were residents of the State of

Florida.

4.     At all times material, Defendant, MASTEC, INC., was/is a Florida Profit

EXHIBIT A

Corporation authorized to conduct business in the State of Florida, with its principal place of business in Coral Gables, Florida.

5.      At all times material, Defendant, MASTEC SERVICES COMPANY, INC., was/is a Florida Profit Corporation authorized to conduct business in the State of Florida, with its principal place of business in Coral Gables, Florida.

6.      At all times material, Defendant, DIRECTV Global Holdings, LLC ("DIRECTV"), was/is a Foreign Profit Corporation authorized to conduct business in the State of Florida and is the successor of DirecTV, Inc.

## GENERAL ALLEGATIONS

7.      Mastec Defendants contract with DIRECTV for the installation of satellite dishes, satellite receivers, and related equipment necessary for receiving satellite signals from DIRECTV.

8.      Defendants are employers as defined by Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b), *et seq.* ("FLSA").

9.      At all material times, Defendants were an enterprise covered by the FLSA, and as defined by 29 U.S.C. §203(r) and 203(s).  Additionally, Plaintiffs were engaged in interstate commerce during their employment with Defendants.

10.     Defendants were joint employers and/or a joint enterprise pursuant to the applicable laws.

11.     Plaintiffs were employed by Defendants during the relevant time period as installation and service technicians.

12.     This action is brought under the FLSA to recover unpaid overtime compensation and minimum wages owed to Plaintiffs and all others similarly situated

**EXHIBIT A**

who are or were employed by Defendants as installation and service technicians.

13.     Plaintiffs and others similarly situated were employees of Defendants under the FLSA.

14.     Defendants failed to comply with the FLSA because Plaintiffs, and other similarly situated employees, were regularly required to work in excess of forty (40) hours a workweek but were not paid overtime compensation as required by the FLSA.

15.     Defendants refuse to pay Plaintiffs and other similarly situated employees for: (1) travel time to and from job assignments; (2) time spent at Defendants' facilities obtaining the necessary tools and equipment to perform their jobs; (3) time spent closing out jobs; (4) time spent at job sites at which an installation or service is not completed, or where an order is cancelled; (5) time spent in meetings with supervisors; and (6) other time worked for which compensation is owed.

16.     The additional persons who may become plaintiffs in this action are employees who held positions similarly situated to Plaintiff and who were required to work in excess of forty (40) hours a workweek but were not paid overtime compensation as required by the FLSA.

17.     DIRECTV wrongfully classified Plaintiffs and those similarly situated as employees of Mastec Defendants to avoid the reach of federal and state wage and hour laws, in what has been described as a "fissured employment scheme."

18.     Mastec Defendants, in turn, wrongfully force employees to sign agreements in which they purport to waive their rights to pursue class or collective actions to avoid the reach of federal and state wage and hour laws.

19.     The effect of these combined actions of DIRECTV and the Mastec

**EXHIBIT A**

Defendants by employing the fissured employment scheme and the purported class/collective action waivers is to prevent and chill employees from pursuing their rights under the FLSA.

20. During the relevant time period, a substantial percentage of Mastec's revenues were derived from DIRECTV. Mastec advertises on its website that its technicians "represent[] the face and/or brand of DIRECTV...."

21. Defendants share management personnel. Indeed, Mastec's COO, Robert Apple, was Senior Vice President of DIRECTV and was/is responsible for DIRECTV's installation and service network.

22. During the relevant time period, Mastec accounted for approximately 30 percent of DIRECTV's total installations and upgrades.

23. Mastec is paid by DIRECTV for each satellite installation in its territory, a percentage of which is paid to the employee performing that installation.

24. Mastec employees wear DIRECTV uniforms and badges, drive vehicles bearing the DIRECTV logos and represent themselves to the public as DIRECTV employees.

25. The installation procedures technicians follow on a day to day basis are set forth in the Home Service Provider ("HSP") agreement between DIRECTV and Mastec.

26. DIRECTV, including Robert Apple, participated in establishing and implementing the piece rate and charge back pay structure implemented by Mastec Defendants which violates the FLSA.

27. DIRECTV has been found by the National Labor Relations Board to have

**EXHIBIT A**

been actively involved in adverse employment decisions with respect to employees of the Mastec Defendants.

28.     DIRECTV formed and controls its provider networks through provider agreements with its HSPs.

29.     Defendants subject their employees to chargebacks or deductions from their pay for various reasons, including for problems arising with a system after installation.

30.     Defendants' management knowingly encourages and facilitates the misreporting of hours by Plaintiff and other similarly situated employees, in violation of the FLSA.

31.     Defendants' violations of the FLSA were knowing, willful and in reckless disregard of the rights of Plaintiff and all other similarly situated.

32.     As evidence of Defendants' willfulness, Defendants have been aware for years that their pay practices are violative of the FLSA, but rather than correct such unlawful practices, Defendants instead force employees to sign an agreement known as a Dispute Resolution Policy ("DRP") in which they purport to acknowledge that they will be bound to a dispute-resolution policy which waives their rights to bring class or collective actions and infringes their rights to pursue their FLSA remedies in court.

33.     Defendants' practice of forcing employees to sign an agreement in which they purport to acknowledge that they will be bound to a dispute-resolution policy which waives their rights to bring class or collective actions has been held to violate federal law. *See MasTec Services Co. Inc.*, No. 16-CA-086102 (NLRB 2013).

34.     The agreements Defendants force employees to sign in which they

purport to waive their rights to pursue class or collective actions to avoid the reach of federal and state wage and hour laws are "yellow dog contracts" in violation of the Norris LaGuardia Act.

35.     This practice has of forcing employees to sign an agreement in which they purport to acknowledge that they will be bound to a dispute-resolution policy which infringes their rights to pursue their FLSA remedies has a chilling effect and discourages employees from pursuing claims.  As such, it is unenforceable under Florida law.  *See Hernandez v. Colonial Grocers, Inc.*, 124 So. 3d 408, 409-10 (Fla. 2d DCA 2013); *Flyer Printing v. Hill*, 805 So. 2d 829 (Fla. 2d DCA 2001).

36.     As further evidence of Defendants' willfulness, Defendants continue to attempt to enforce this practice, despite their knowledge that the practice violates federal law and in violation of an NLRB order requiring Defendants from enforcing their unlawful dispute-resolution policy.

37.     Plaintiffs have been required to retain the undersigned counsel to represent them in this action and are obligated to pay them a reasonable fee for their services.

**COUNT I**
**OVERTIME – FLSA**

38.     Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 to 37 as if fully restated herein.

39.     During the three (3) year period prior to filing this action, Defendants failed to pay Plaintiffs and all other similarly situated employees overtime compensation for hours worked over forty (40) in a workweek.

40.     Defendants' failure to pay Plaintiffs and all other similarly situated

**EXHIBIT A**

employees overtime compensation for hours worked over forty (40) in any workweek constitutes a violation of the FLSA, 29 U.S.C. § 207.

41.   Defendants' violations of the FLSA were knowing, willful and in reckless disregard of the rights of Plaintiffs and all other similarly situated.

**WHEREFORE**, Plaintiffs respectfully request, on behalf of themselves and all others similarly situated, that this Court issue an Order awarding damages in the amount of the unpaid overtime compensation owed, awarding liquidated damages pursuant to 29 U.S.C. § 216(b), awarding reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b), and awarding all such other relief as the Court deems just and appropriate.

**COUNT II**
**DECLARATORY JUDGMENT**

42.   Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 to 37 as if fully restated herein.

43.   Pursuant to Florida Statute § 86.011, "[t]he circuit and county courts have jurisdiction within their respective jurisdictional amounts to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed."

44.   Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

45.   An actual, substantial, and continuing justiciable controversy exists between Plaintiffs and Defendants that requires a declaration of rights by this Court.

Specifically, Plaintiffs require a declaratory judgment finding that the "Dispute Resolution Policy" at issue (the "DRP") is an illegal yellow dog contract unenforceable under the Norris-LaGuardia Act and the National Labor Relations Act.

46.     The DRP is unenforceable under the Norris-LaGuardia Act.  Through the DRP, Mastec requires its employees to agree to substitute an arbitral for a judicial forum for the vindication of their employment rights, including the protections afforded by the Fair Labor Standards Act ("FLSA"). But, Mastec's policy does more. It precludes an employee from joining with any other employee in making a common claim in that arbitral forum and, consequently, in either a judicial or arbitral forum. This is a yellow dog contract: a term of opprobrium applied by workers to contracts that restrict their freedom of association. It is unenforceable in the federal courts by virtue of Norris-LaGuardia, 29 U.S.C. § 101, *et seq*.

47.     Section 2 of Norris-LaGuardia declares it to be the "public policy of the United States" that the individual employee be free of "interference" or "restraint" by employers when they engage in "concerted activities for the purpose of . . . mutual aid or protection." 29 U.S.C. § 102. Section 3 of the Act provides that, "any undertaking or promise" that is contrary to the policy declared in section 2 "shall not be enforceable in any court of the United States." 29 U.S.C. § 103 (emphasis supplied).

48.     Thus, taken together, sections 2 and 3 of the Act provide that "any . . . undertaking or promise in conflict with the public policy" that employees "shall be free from the interference . . . of employers in . . . concerted activities for the purpose of . . . mutual aid or protection" "shall not be enforceable in any court of the United States and shall not afford any basis for the granting of legal or equitable relief by any such court."

29 U.S.C. §§ 102, 103.  On their face, these provisions bar enforcing the agreement at issue.

49.    The language and structure of section 3 of Norris-LaGuardia make clear that the Act was intended to do more than merely bar enforcement of contracts prohibiting union membership. It denies enforcement to a broad array of "yellow dog contracts" that would bar concerted activity to improve working conditions.  Section 3 prohibits enforcement of two categories of contracts:

(1)    "Any undertaking or promise, such as is described in this section"; and

(2)    "**any** other undertaking or promise **in conflict with the public policy declared in section 102** of this title." 29 U.S.C. § 103 (emphasis supplied).

50.    The second category of unenforceable contracts -- "**any** other undertaking or promise **in conflict with the public policy declared in section 102** of this title" (emphasis supplied) -- necessarily encompasses a wider array of agreements not to take concerted action to improve working conditions, such as the agreement at issue here.

51.    Importantly, section 4 of the Act evidences Congress' intent to protect a broad range of concerted activity intended to improve working conditions, expressly including collective litigation. Section 4 provides:

> No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute . . . from doing, whether singly or in concert, any of the following acts:
> ...
>
> (d) By all lawful means aiding any person participating or interested in any labor dispute who is . . . prosecuting, any action or suit in any court of the United States or of any State;

EXHIBIT A

...

(h) Agreeing with other persons to do or not to do any of the acts
heretofore specified.

29 U.S.C. § 104.

52.    Taken together, subsections (d) and (h) of section 4 of the Act make clear
that Congress intended that joining with another person in a suit seeking a remedy in a
labor dispute to be within the category of "concerted activity for the purpose of . . .
mutual aid and protection." Such group legal action is insulated from employer
"interference, restraint, or coercion" by section 2. As a result, "any undertaking or
promise" made by the employee purportedly to eschew the right to engage in such
group resort is unenforceable under section 3 – it is contrary to the "public policy of the
United States."

53.    The language of Norris-LaGuardia thus encompasses collective
enforcement of workplace rights. The United States Supreme Court has stated that
unequivocally with respect to the identical language in section 7 of the NLRA:
"concerted activities for the purpose of . . . mutual aid or protection" encompasses
seeking redress in any forum – legislative, judicial, administrative – in which employees
may "protect their interests as employees." *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565-66
(1978). This includes filing group lawsuits. *Brady v. National Football League*, 644 F.3d
661, 677 (8th Cir. 2011); *Mohave Elec. Co-Op., Inc. v. NLRB*, 206 F.3d 1183, 1189
(D.C. Cir. 2000). This includes efforts to gather employees into a group for the litigation
of FLSA claims. *Salt River Valley Water Users' Ass'n v. NLRB*, 206 F.2d 325, 328-29
(9th Cir. 1953).

54.    Just as a promise not to form a union or an informal group to present a

grievance about low wages cannot be enforced under Norris-LaGuardia, neither can a promise not to present a group grievance to have a promised or statutorily guaranteed wage actually paid – whether the grievance is presented to the employer directly or in any forum where relief may be granted: in court or in arbitration as the forum substituted for court. As the Senate Report on the measure presciently observed, "If these [yellow dog] contracts are held to be legal in one type of litigation, it would follow that they must be legal in all other controversies. ..." S. Rep. No. 72-163 15 (1932), hence the sweep of the prohibition. *Id.*

55.     The DRP is unenforceable under the National Labor Relations Act. MasTec's DRP has been held by the National Labor Relations Board ("NLRB") to be unenforceable and violative of federal law, and the company was ordered to cease and desist from enforcing the policy.  *See MasTec Services Co. Inc.*, No. 16-CA-086102 (NLRB 2013).

56.     Specifically, an NLRB ALJ held that the DRP violates Sections 7 and 8(a)(1) of the NLRA and explained:

> The Board has long held that concerted legal action addressing wages, hours and working conditions, whether in a courtroom setting, before an administrative agency, or through arbitration, represents protected concerted activities under Section 7 of the Act. *Horton, supra.*, at p. 2-3, and *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565-566 (1978), where the Court stated, "it has been held that the 'mutual protection" clause protects employees from retaliation by their employers when they seek to improve working conditions through resort to administrative and judicial forums.". . .

> Respondent's Dispute Resolution Policy, even with the opt out provision, violates Section 8(a)(1) for the following reasons.  The Act grants to employees the right to engage in protected concerted activities without interference by his/her employer. As these rights are granted by the Act, an employer may not lawfully require its employees to affirmatively act (opt out, in writing, within thirty days of receipt of the Employee Handbook) in order to obtain or maintain these rights. *Ishikawa Gasket America, Inc.*,

337 NLRB 175-176 (2001). Further, employees who do opt out are unable to cooperate and engage in concerted activities with those employees who did not opt out; they cannot engage in class actions with them and, pursuant to the terms of the Policy, they cannot learn of the existence, content or results of prior arbitrations that the non-opt out employees were involved in. This would clearly put them at a disadvantage in their attempts to engage in concerted actions.

Having found that the Respondent has violated the Act by maintaining the Dispute Resolution Policy I recommend that Respondent be ordered to cease and desist from enforcing this policy, and to post the Board Notice set forth below at each of its locations where the Dispute Resolution Policy is in effect. Further, I recommend that Respondent be ordered to notify all arbitral and judicial panels where it has attempted to enjoin, or otherwise prohibit, employees from bringing or participating in class or collective actions, that it withdrawing these objections and that it no longer objects to such employee actions.

*Id*. (emphasis supplied). MasTec appealed the NLRB ALJ order.

57.     The NLRB repeatedly has since upheld this reasoning.  *See, e.g., Murphy's Oil USA Inc.*, 361 NLRB 72 (Oct. 28, 2014); *Hooters of Ontario Mills*, 363 NLRB 2 (Sept. 1, 2015); *On Assignment Staffing Svcs., Inc.*, 362 NLRB 189 (Aug. 27, 2015).

58.     Pursuant to 28 U.S.C. §§ 2201 and 2202,a judicial determination of the respective rights of the parties with respect to the enforceability of the DRP under the Norris LaGuardia Act and the National Labor Relations Act is necessary and appropriate under the circumstances.

WHEREFORE, Plaintiffs pray for: (a) a judicial declaration that the DRP, including the class/collective action provisions, are unenforceable under the Norris LaGuardia Act and the National Labor Relations Act; and (b) such other and further relief as the Court deems just and proper.

**EXHIBIT A**

## JURY TRIAL DEMAND

Plaintiffs demand trial by jury as to all issues.

**DATED** this 16th day of November, 2015.

Respectfully submitted,
WHITTEL & MELTON, LLC
*/s/ Jay P. Lechner*
Jay P. Lechner, Esq.
Florida Bar No.: 0504351
Jason M. Melton, Esq.
Florida Bar No.: 605034
One Progress Plaza
200 Central Avenue, #400
St. Petersburg, Florida 33701
Telephone: (727) 822-1111
Facsimile: (727) 898-2001
Service Email:
lechnerj@theFLlawfirm.com
shelley@theFLlawfirm.com
Pleadings@theFLlawfirm.com

*Attorneys for Plaintiffs*